UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM S. POFF,<br><br>Defendant. | CASE NO. CR09-0160JLR<br><br>ORDER DIRECTING PAYMENT FROM INMATE TRUST ACCOUNT |

## I.    INTRODUCTION

Before the court are the following motions:  (1) Plaintiff United States of America's ("the Government") motion for an order requiring the Bureau of Prisons ("BOP") to relinquish funds that are presently held in Defendant William S. Poff's inmate trust account to the Clerk of Court for the purpose of paying criminal monetary penalties imposed upon Mr. Poff in this case (US Mot. (Dkt. # 306)), (2) Mr. Poff's motion to unencumber his inmate trust account (Poff Mot. (Dkt. # 308)), (3) Mr. Poff's motion for clarification (2d Poff Mot. (Dkt. # 313)), and (4) Mr. Poff's motion to

ORDER- 1

1    preclude fraud (3d Poff Mot. (Dkt. # 315)).[1]  The court has considered the motions, all

2    submissions filed by the parties in support of or opposition to the motions, the relevant

3    portions of the record, and the applicable law.  Being fully advised, the court GRANTS

4    the Government's motion and DENIES Mr. Poff's motions.

5                                    **II.    BACKGROUND**

6           On October 12, 2010, the court entered a criminal judgment against Mr. Poff for

7    multiple counts of Bank Fraud, Wire Fraud, and Money Laundering.  (Judgment (Dkt.

8    # 259).)  The court sentenced Mr. Poff to 135 months in prison followed by five years of

9    supervised release.  (*Id.* at 3-4.)  The sentence also required Mr. Poff to pay restitution in

10   the amount of $4,258,529.13.  (*Id.* at 6.)  The criminal judgment recites that Mr. Poff's

11   restitution payment "IS DUE IMMEDIATELY."  (*Id.* at 8 (capitalization in original).)

12   The criminal judgment requires Mr. Poff to pay "no less than 25% of [his] inmate gross

13   monthly income or $25.00 per quarter, whichever is greater" while he is imprisoned.

14   (*Id.*)  However, this payment schedule "is the minimum amount that the defendant is

15   expected to pay towards the monetary penalties," and Mr. Poff is expected to "pay more

16   _____

17        [1] The Government filed its motion on April 20, 2016.  (*See* US Mot.)  Mr. Poff filed his
     initial motion on April 21, 2016.  (*See* Poff Mot.)  The court construed Mr. Poff's initial motion
18   as a response to the Government's motion.  (*See* 4/15/16 Dkt. Entry.)  On April 28, 2016, the
     Government filed a reply memorandum in support of its motion.  (Reply (Dkt. # 309).)
19   However, on May 2, 2016, Mr. Poff filed a response to the Government's motion.  (Resp. (Dkt.
     # 310).)  One week later, Mr. Poff filed his motion for clarification, which addresses the same
20   issues as the Government's motion and Mr. Poff's first motion.  (*See* 2d Poff Mot.)  Accordingly,
     the court granted the Government leave to file an additional three-page surreply memorandum.
21   (5/10/16 Order (Dkt. # 312).)  The Government filed its surreply on May 11, 2016.  (Surreply
     (Dkt. # 314).)  On May 26, 2016, Mr. Poff filed his motion to preclude fraud, which also
22   addresses the same issues as those in the Government's motion and Mr. Poff's first and second
     motions, although it raises a new argument.  (*See* 3d Poff Mot.)

1    than the amount established whenever possible."  (*Id.*)  The remaining balance on Mr.

2    Poff's restitution as of April 15, 2016, was $4,255,591.63.  (Fernandez Decl. (Dkt. # 307)

3    ¶ 3.)

4         The BOP establishes inmate trust accounts to maintain inmates' monies received

5    from prison employment, friends, family, and other sources.  28 C.F.R. § 506.1.  Mr. Poff

6    presently has a balance in his inmate trust account of at least $2,663.05.  (Fernandez

7    Decl. ¶ 4.)  At the request of the United States Attorney's Office, the BOP has

8    encumbered Mr. Poff's inmate trust account to prevent him from making withdrawals.

9    (*Id. ¶¶* 4-5.)  The Government now moves for an order authorizing the BOP to turn over

10   funds from Mr. Poff's inmate trust account to the Clerk of Court to be applied towards

11   Mr. Poff's restitution balance (*see* US Mot.), and Mr. Poff moves for an order directing

12   the BOP to unencumber his account (*see* Poff Mot.; 2d Poff Mot.; 3d Poff Mot.).  The

13   court now considers the parties' motions.

14                    **III.    ANALYSIS**

15        The Government seeks an order authorizing the BOP to turn over funds in Mr.

16   Poff's inmate trust account to be applied to the $4,255,591.63 in restitution that Mr. Poff

17   owes as part of his sentence.  (*See generally* US Mot.)  An order of restitution is a lien in

18   favor of the United States on all property and rights to property of the defendant.  18

19   U.S.C. § 3613(c).  Further, an order of restitution may be enforced by the United States in

20   the same manner that United States recovers fines or "by all other available and

21   reasonable means." 18 U.S.C. § 3664(m)(1)(A)(i).  In addition, the Mandatory Victims

22   Restitution Act provides:

ORDER- 3

1
2
3

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

4   18 U.S.C. § 3664(n).  "Under these statutes, courts have found it appropriate to order the

5   turnover of funds in inmate trust accounts to be applied to restitution."  *See United States*

6   *v. Hester*, No. 10CR2967 BTM, 2016 WL 1007335, at *2 (S.D. Cal. Mar. 14, 2016)

7   (collecting cases).[2]

8       Nevertheless, Mr. Poff has objected to the Government's motion on two general

9   grounds.  (*See generally* Poff Mot.; Resp. (Dkt. # 310); 2d Poff Mot.)  He objects that

10  BOP encumbered his account without due process.  (*See* Poff Mot. at 3; Resp. at 4.)  He

11  also objects that his veteran's disability service benefits are exempt from the

12  Government's debt collections efforts.  (*See* Resp. at 3; 2d Poff Mot. at 3-4; *see generally*

13  3d Poff Mot.)  The court addresses these issues in turn.

14  **A.  Due Process**

15      Mr. Poff asserts that the Government violated his due process rights when the

16  Government requested that the BOP encumber Mr. Poff's inmate trust account pending

17  disposition of the Government's present motion.  (Poff Mot. at 3 ("[T]he Ninth Circuit

18  has explicated that there is no question that prisoners have a protected liberty interest in

19  their prison trust accounts, and that the institution 'must provide a hearing prior to

20

21      [2] The narrow exemptions available to criminal restitution debtors enumerated in 18
22  U.S.C. § 3613(a) do not apply to the funds contained in Mr. Poff's inmate trust account.  *See* 18
    U.S.C. § 3613(a)(1)-(3).

1  freezing a significant sum in the inmate's account.'" (quoting *Quick v. Jones*, 754 F.2d

2  1521 (9th Cir. 1985)).)

3        Prisoners have a protected property interest in the funds in their prison trust

4  accounts.  *Shinault v. Hawks*, 782 F.3d 1521 1057 (9th Cir. 2015) (citing *Quick*, 754 F.2d

5  at 1523).  "[I]n *Mathews v. Eldridge*, the Supreme Court set forth a three-part inquiry to

6  determine whether the procedures provided to protect a liberty or property interest are

7  constitutionally sufficient."  *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192

8  (9th Cir. 2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).  "The

9  *Mathews* test balances three factors: (1) the private interest affected; (2) the risk of

10  erroneous deprivation through the procedures used, and the value of additional

11  safeguards; and (3) the government's interest, including the burdens of additional

12  procedural requirements."  *Shinault*, 782 F.3d at 1057 (citing *Mathews*, 424 U.S. at 335).

13        The first *Matthews* factor—"the private interest affected"—refers to Mr. Poff's

14  interest in his inmate trust account.  *See id.*  "There is no question that [an inmate's]

15  interest in funds in his prison account is a protected property interest."  *Id.*  In *Shinault*,

16  the inmate received a substantial settlement from a medical liability claim.  *Id* at 1055-56.

17  In response, the Oregon Department of Corrections ("ODOC") issued an order requiring

18  the inmate to pay the estimated cost of his incarceration pursuant to state law and placed

19  tens of thousands of dollars in the inmate's prison account on hold pending an

20  administrative hearing on the issue.  *Id.* at 1056.  The Ninth Circuit found that the

21  prisoner's interest "was clearly substantial" because the ODOC had "deprived him of

22  access to a significant amount of his funds."  *Id.* at 1057.

ORDER- 5

1    The Government, however, asserts that unlike the inmate in *Shinault*, Mr. Poff's

2 interest in his inmate trust account is tempered by the Government's $4.2 million

3 judgment lien that arose upon entry of the criminal judgment and order of restitution in

4 this case.  *See* 18 U.S.C. §§ 3613(c), (f).  Indeed, the Government's judgment lien

5 encompasses "all property and rights to property" owned by Mr. Poff, 18 U.S.C.

6 § 3613(c), and is enforceable upon all of his property at the time judgment is entered,

7 *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993).  In the context of a motion

8 under Federal Rule of Criminal Procedure 41(g),[3] the Ninth Circuit has stated that a

9 restitution order "gives the government a sufficient cognizable claim of ownership to

10 defeat a defendant's . . . motion for return of property, if that property is needed to satisfy

11 the terms of a restitution order."  *Id.*[4]  The Government asserts that it has the same

12 "cognizable claim of ownership" to the funds in Mr. Poff's inmate trust account under the

13 factual circumstances here.  (Reply at 2.)  The court agrees and thus finds that, although

14 Mr. Poff has a private property interest in his inmate trust account, his interest carries less

15 weight in the context of assessing *Matthews* factors because his account is encumbered

16 by a lien in favor of the Government arising out of a criminal judgment.

17    The second *Matthews* factor is the risk of erroneous deprivation through the

18 procedures used and the value of additional safeguards.  *See Shinault*, 782 F.3d at 1057.

19 _____

20    [3] Federal Rule of Criminal Procedure 41(g) provides in pertinent part that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may

21 move for the property's return."  Fed. R. Crim. P. 41(g).

22    [4] At the time that *Mills* was published, the current Federal Rule of Criminal Procedure 41(g) was denominated as Federal Rule of Criminal Procedure 41(e).  *See Mills*, 991 F.2d at 612.

1    In *Shinault*, the court found that the risk of erroneous deprivation weighed in favor of a

2    pre-deprivation hearing because the state statute at issue involved complex mathematical

3    computations and individualized determinations concerning an inmate's ability to pay for

4    the costs of incarceration.  *Id*.  Here, however, the court finds that there is little risk of

5    erroneous deprivation.  Mr. Poff's liability for restitution has already been finally

6    determined and is not subject to refutation.  (*See* Judgment.)  The funds are already

7    subject to the Government's lien.  *See* 18 U.S.C. §§ 3613(c), (f).  Given the certainty of

8    Mr. Poff's liability and the magnitude of his restitution debt, there is virtually no risk that

9    the requested $2,663.05 payment will result in an overpayment or otherwise wrongfully

10   deprive Mr. Poff of his property.

11          Finally, as for the third *Matthews* factor, the Government's interest in collecting

12   restitution for the victims of fraud is significant.  *See Shinault*, 782 F.3d at 1057.

13   Congress has repeatedly demonstrated the priority it places on the collection of restitution

14   in criminal judgments.  For example, Congress has provided crime victims with the right

15   to receive full and timely restitution.   *See* 18 U.S.C. § 3771(a)(6).  Further, full

16   restitution is mandatory for financial crimes irrespective of the defendant's ability to pay.

17   *See* 18 U.S.C. § 3664(f)(1)(A).  In addition, restitution is not dischargeable in

18   bankruptcy.  *See* 18 U.S.C. §§ 3613(e), (f).  Finally, Congress has limited the type of

19   property that is exempt from the collection of restitution.  *See* 18 U.S.C. § 3613(a).  Thus,

20   the court concludes that the Government's interest in collecting restitution for the victims

21   of Mr. Poff's fraud easily outweighs Mr. Poff's minimal interest in his lien-encumbered

22   inmate trust account.

1    The third *Matthews* factor also considers "the burdens of additional procedural

2    requirements." *Shinault*, 782 F.3d at 1057.  Mr. Poff seeks advance notice and a hearing

3    before his inmate trust account is encumbered.  (*See* Resp. at 4.)  As the Government

4    points out, with advance notice, inmates such as Mr. Poff could empty their accounts and

5    frustrate the very collection that Congress has prioritized.  Thus, the Federal Debt

6    Collection Procedures Act ("FDCPA") provides for *ex parte* applications for writs of

7    garnishment and other collection remedies, with notice provided only after the writ has

8    attached to and frozen the targeted asset. *See* 28 U.S.C. § 3004(c).  The FDCPA applies

9    to the collection of criminal restitution and thus supports the court's conclusion that the

10   Government need not notify Mr. Poff before encumbering his inmate trust account for

11   this purpose.  18 U.S.C. §§ 3613(a), 3664(m).  Indeed, as both the Supreme Court and the

12   Ninth Circuit recognize, "post-deprivation process can suffice 'in limited cases' when

13   prompt action is required, an important government interest is involved, and there is

14   substantial assurance that the deprivation is not baseless or unwarranted." *Shinault*, 782

15   F.3d at 1058 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988)).  The

16   court finds that this is one such case.

17       On balance, the *Matthews* factors demonstrate the constitutionality of the

18   Government's encumberance of Mr. Poff's inmate trust account.  The one case Mr. Poff

19   cites in support of his due process argument, *Quick v. Jones*, 754 F.2d 1521 (9th Cir.

20   1985), is distinguishable.  (*See* Poff Mot. at 3.)  In *Quick*, prison officials took an

21   inmate's funds to pay restitution "without a determination of either civil or criminal

22   liability." *Id.* at 1523.  In contrast, Mr. Poff was tried and convicted of 30 felony counts

1   of bank fraud, money laundering, and related crimes.  (*See* Judgment.)  During his eight-

2   day bench trial and subsequent sentencing hearing, Mr. Poff had a full opportunity to

3   rebut the charges against him and the calculation of his restitution.  (Dkt. ## 166-89, 207,

4   258.)  Unlike the inmate in *Quick*, Mr. Poff's criminal prosecution "informed [him] of

5   [his] financial liability" and gave him "a meaningful opportunity to contest the

6   assessment before" the BOP encumbered his account.  *See Shinault*, 782 F.3d at 1059.

7       **B.  Statutory Exemption**

8       Mr. Poff asserts that most of the funds in his inmate trust account are service-

9   related disability payments from the United States Department of Veterans Affairs ("the

10  VA").  (Poff Mot. at 2.)  He claims that these funds are exempt from collection by the

11  Government for purposes of restitution based on 38 U.S.C. § 5301(a)(1).  (Poff Mot. at

12  2-3; Resp. at 2-4; 2d Poff Mot. at 2-4.)  Section 5301(a)(1) states in pertinent part:

13          Payments of benefits due or to become due under any law administered by
            the Secretary shall not be assignable except to the extent specifically
14          authorized by law, and such payments made to, or on account of, a
            beneficiary shall be exempt from taxation, shall be exempt from the claim
15          of creditors, and shall not be liable to attachment, levy, or seizure by or
            under any legal or equitable process whatever, either before or after receipt
16          by the beneficiary.  The preceding sentence shall not apply to claims of the
            United States arising under such laws . . . .

17
18  38 U.S.C. § 5301(a)(1).  Although there is scant case authority interpreting this provision,

19  the statutory language plainly exempts claims by the United States.  *Id.*; *see also Metcalf*

20  *v. United States*, No. 12-518C, 2013 WL 1517821, at *4 (Fed. Cl. Apr. 15, 2013) (stating

21  that Section 5301(a)(1) "eliminate[s] any bar to the Federal Government attaching or

22  seizing VA benefits."); *Funeral Fin. Servs., Ltd. v. United States*, No. 98 C 7905, 2000

WL 91919, at *2 (N.D. Ill. Jan. 18, 2000), *aff'd sub nom. Funeral Fin. Sys. v. United States*, 234 F.3d 1015 (7th Cir. 2000) ("[T]he provision seems to exempt claims of the United States from the general ban on creditors making claims on the benefits."). Thus, the exemption in Section 5301(a)(1) does not apply to the Government's claim here.

Further, as the Government points out, although service-connected disability payments are exempt from most creditors, Congress has eliminated exemptions to the collection of criminal restitution except for a narrow set of exemptions specifically enumerated in 18 U.S.C. § 3613. Indeed, Congress has stated that the Government may enforce a restitution order against all of a restitution debtor's "property or rights to property" "[n]otwithstanding any other Federal law." 18 U.S.C. § 3613(a). Although courts have not always accorded universal effect to the "notwithstanding" language, as a general proposition "notwithstanding" clauses broadly sweep aside potentially conflicting laws. *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007). In the specific context of 18 U.S.C. § 3613(a), the Ninth Circuit has found that by using the "notwithstanding " and "all property" clauses, Congress intended the Government's ability to collect criminal restitution to trump even the broad protections against alienation afforded to retirement plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. *Novak*, 476 F.3d at 1047-48. Indeed, by using these clauses, the Ninth Circuit stated that "Congress manifested that § 3613(a) means what it says—that it reaches '*all* property or rights to property'. . . including property otherwise covered by federally mandated anti-alienation provisions." *Novak*, 476 F.3d at 1048 (italics in original). The court sees no reason not to apply the

1    reasoning of *Novak* to Section 5301(a)(1) so that the protections that ordinarily would

2    apply to Mr. Poff's service-connected disability payments are superseded by the

3    Government's authority to collect restitution under 18 U.S.C. § 3613(a).

4           Mr. Poff also relies upon 26 U.S.C. § 6334(a)(10)'s exemption for service-

5    connected disability payments.  (*See* Resp. at 3; 2d Poff Mot. at 2, 7.)  Section

6    6334(a)(10)'s exemption for service-connected disability payments is expressly

7    incorporated by 18 U.S.C. § 3613(a)(1) and applies to restitution collection.  This

8    exemption, however, only protects amounts "payable to an individual," not amounts

9    already paid and deposited in the recipient's account.  26 U.S.C. § 6334(a)(10).  In

10   *Hughes v. IRS*, 62 F. Supp. 2d 796 (E.D.N.Y. 1999), the court held "after an examination

11   of the plain language of the statute, that . . . § 6334(a)(10) . . . exempt[s] from levy only

12   amounts that are payable—that is, amounts that are not yet paid."  *Id.* at 800-01.  The

13   court explained that "the funds in plaintiffs' bank account, which were levied upon by the

14   defendants, were no longer capable of being paid" and therefore dismissed the plaintiffs'

15   claims that the levied funds were exempt from seizure.  *Id.* at 801; *see also United States

16   v. Coker*, 9 F. Supp. 3d 1300, 1302 (S.D. Ala. 2014).  The *Hughes* court reasoned that

17   amounts "payable" must be distinguished from amounts already paid because, elsewhere

18   in Section 6334(a), Congress exempts "any amounts payable to or received by" an

19   individual.  *Hughes*, 62 F. Supp. 2d at 800 (citing 26 U.S.C. § 6334(a)(9)).

20          This court also notes that the term "payable" in Section 6334(a)(10) cannot be

21   construed to include amounts already paid without rendering the clause "or received by"

22   in Section 6334(a)(9) to be mere surplusage.  The court is disinclined to interpret a

1  statutory provision in a manner that would render a portion of it to be surplusage. *See*

2  *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062-63 (9th Cir. 2008) (citing *Am. Vantage*

3  *Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002)).  Because Mr.

4  Poff has already received the funds in his inmate trust account, those funds are no longer

5  "payable" to him and therefore are not exempt from collection by the Government under

6  18 U.S.C. § 3613(a)(1).[5]

7       Finally, Mr. Poff argues that the funds in his inmate trust account are statutorily

8  exempt from the Government's enforcement action pursuant to 26 U.S.C. § 6334(a)(9).

9  (3d Poff Mot. at 1-2.)  Section 6334(a)(9) exempts "[a]ny amount payable to or received

10  by an individual as wages or salary for personal services, or as income derived from other

11  sources, during any period, to the extent that the total of such amounts payable to or

12  received by him during such period does not exceed the applicable exempt amount . . . ."

13  26 U.S.C § 6334(a)(9).  Mr. Poff asserts that he has earned less than the applicable

14  exempt amount, and thus the funds in his inmate trust account are exempt from collection

15

---

16     [5] Mr. Poff also relies upon *Higgins v. Beyer*, 293 F.3d 683 (3d Cir. 2002).  (Resp. at 3-4.)
17  *Higgins* involved the State of New Jersey's attempt to collect a criminal fine under New Jersey
    state law.  *Id.* at 686.  Because the state officials derived their authority to seize the inmate's
18  funds from state law, their authority was limited by contrary federal law.  *Id.* at 693.  Thus, the
    provisions of 38 U.S.C. § 5301(a) constituted contrary federal authority and prohibited state
19  officials from seizing the inmate's veterans' disability benefits that had been deposited into his
    inmate account.  *Id.*  Here, the Government is collecting criminal restitution based on federal
20  statutes that enumerate certain narrow exemptions and otherwise expressly authorize the federal
    government to enforce an order of restitution against all property "[n]otwithstanding any other
    Federal law."  18 U.S.C. §§ 3613(a), (f).  As discussed above, the protections of 38 U.S.C.
21  § 5301(a) are not included in 18 U.S.C. § 3613(a)'s enumerated exemptions.  *See* 18 U.S.C.
    §§ 3613(a)(1)-(3).  Thus, although 38 U.S.C. § 5301(a) preempted the New Jersey law under
22  which the state officials were operating in *Higgins*, that statute yields to the United States' right
    to collect criminal restitution under 18 U.S.C. § 3613(a).  *See Novak*, 476 F.3d at 1048.

1    by the Government.  (3d Poff Mot. at 1-2.)  As noted above, 18 U.S.C. § 3613(a)(1)

2    exempts certain types of property from the Government's attempts to enforce a judgment.

3    *See supra* at 11 (discussing the exemption found in 26 U.S.C. § 6334(a)(10)).  Exempted

4    property includes "property exempt from levy for taxes pursuant to section 6334(a)(1),

5    (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 ."  18

6    U.S.C. § 3613(a)(1).  Notably, Section 3613(a)(1) excludes the exemption set forth in

7    Section 6334(a)(9), upon which Mr. Poff relies.  Accordingly, the court concludes that 26

8    U.S.C. § 6334(a)(9) does not prohibit the Government's enforcement action against the

9    funds in Mr. Poff's inmate trust account.

10        **C.  Other Objections**

11        Mr. Poff argues that 18 U.S.C. § 3664(n) does not require payment because he has

12   not received "substantial resources" while in prison and has been "in complete

13   compliance with th[e] program to pay his restitution."  (Poff Mot. at 2.)  Although the

14   statute does not define "substantial," the court concludes that $2,663.05 satisfies the

15   ordinary meaning of this term.  Further, numerous courts, including district courts in the

16   Ninth Circuit, have ruled that "any schedule established by a court for payment of

17   restitution does not prevent the United States from levying on a defendant's property to

18   satisfy the order of restitution."  *United States v. Kuehler*, No. CR-05-60 EBLW, 2006

19   WL 2981831, at *2 (D. Idaho Oct. 16, 2006) (citing *United States v. Hanhardt*, 353 F.

20   Supp. 2d 957, 960 (N.D. Ill. 2004) and *United States v. Laws*, 352 F. Supp. 2d 707, 711

21   (E.D. Va. 2004)).  Thus, the fact that Mr. Poff has been timely in his restitution payments

22

ORDER- 13

1    to date does not prevent the Government from moving to enforce the judgment against

2    other, additional funds in Mr. Poff's possession.

3        Finally, Mr. Poff complains that he is unable to pay for phone or email service in

4    prison or make photo copies in the inmate law library.  (Resp. at 4.)  He also argues that

5    if forced to relinquish the funds demanded by the Government, he will be unable to

6    purchase hygiene materials from the commissary or to save funds in preparation for his

7    eventual release.  (*Id.* at 4-5.)  The court takes judicial notice of the fact that the BOP will

8    provide for Mr. Poff's necessities during his period of incarceration.  In addition, after his

9    next monthly payment of disability benefits or from the prison payroll, he will again have

10   funds to spend or to save toward his eventual release (which is more than three years

11   away).

12                           **IV.    CONCLUSION**

13       Based on the foregoing analysis, the court GRANTS the Government's motion to

14   require payment from Mr. Poff's inmate trust account (Dkt. # 306) and DENIES Mr.

15   Poff's motions to unencumber his inmate trust account (Dkt. # 308), for clarification

16   (Dkt. # 313), and to preclude fraud (Dkt. # 315).

17       In addition, pursuant to 18 U.S.C. § 3664(n), the court ORDERS as follows:

18       Within 30 days from the date of this Order, the BOP shall turn over $2,663.05

19   from Mr. Poff's BOP inmate trust account to the Clerk of this Court, via check payable to

20   "United States District Court, Western District of Washington," referencing Case No.

21   CR09-00160-JLR-3, and delivered either personally or by First Class Mail to:

22   //

ORDER- 14

United States District Court, Western District of Washington
Attn: Financial Clerk – Lobby Level
700 Stewart Street
Seattle, Washington 98101

Alternatively, the BOP may make the required payment to the Clerk of the Court within 30 days from the date of this Order, via electronic transfer in the manner that it makes payments through the Inmate Financial Responsibility Program.

Dated this 31st day of May, 2016.


JAMES L. ROBART
United States District Judge

ORDER- 15